JANVIER, Judge. .
Plaintiff, Thomas C, Edrington, desiring to purchase a residence for his own .use through the defendant, M. Arnold Leh- *774 mann, a licensed real estate agent, executed a written offer to purchase certain property which was owned and occupied iby Mr. and Mrs. William T. de Valcourt. This offer was dated June 25, 1948, and was accepted by de Valcourt. It contained a stipulation reading as follows: “Possession 60 days from act of sale. Owner to pay $50.00 per week if not out at specified time.”
The agreement also provided that the act of sale would be passed on or before August 15, 1949.
The purchaser, Edrington, arranged for a loan through a homestead association, and, accordingly, on September 17, 1948, the parties met in the office of the notary public of the association to consummate the transaction. (The -fact that the sale was not executed on or before August 15th, as stipulated, plays no part in this controversy.) When the parties met in the office of the notary public, Edrington raised the question of what rent would be paid by de Valcourt for the continued use of the property during the sixty-day period following the execution of the act of sale and de Valcourt answered that he would pay no rent during that period. Thereupon, Ed-rington, the prospective purchaser, declared that unless he should be paid rent during the period, he would refuse to make payment for the property and to take title thereto.
In that situation the defendant Lehmann, the real estate agent who had negotiated the transaction, signed and delivered to Ed-rington a letter reading as follows:
“Sept. 17, 1948
“■Commander Thomas C. Edrington
“New Orleans, La.
“Dear Sir:
“In connection with the sale today from Mr. and Mrs. de Valcourt to you of the property 404 Dodge Avenue, and in order to carry out the agreement had by you with me in this matter, I obligate myself to pay to you at the rate of $2.53 per day, for each day that Mr. and Mrs. de Valcourt remain in said property up to the time of sixty days from this date.
“By way of example, if the de Valcourts remain in the property for say thirty days, I am obligated to pay to you $75.96, and so on.
“The consideration of this obligation on my part is that you have advised me you would not go thru with this sale today unless you were compensated for your estimated loss of $75.00 per month during the time the de Valcourts remain in the property up to the sixty-day period.
“Yours very truly,
“(Signed) M. Arnold Lehmann”.
On receipt of this letter, Edrington took title to the property, de Valcourt remained in the property beyond the sixty-day period and accordingly, Lehmann, if he is legally liable to Edrington under the above quoted agreement, became liable for $151.80.
On October 1, 1948, Lehmann paid to Edrington $32.89, representing $2.53 per day for the last thirteen days of September, but thereafter refused to make any further payment, taking the position that the agreement under which he had promised to make payment to Edrington was without consideration and therefore was not binding on him.
This suit is the result of that refusal. Edrington prays for judgment for $118.91, the balance for which Lehmann is liable if he is bound by that letter.
Lehmann first filed an exception of no cause of action, which was overruled, and then an answer, and from a judgment against him as prayed for, he has appealed suspensively.
Lehmann’s contention that there was no consideration for- his agreement to pay Ed-rington for such period as de Valcourt might remain in the premises is based on the well established legal principle which is set forth in Monroe Inv. Co., Limited, v. Ford, 168 La. 475, 122 So. 586, 587, in which the Supreme Court quotes the following from 13 Corpus Juris 351, Contracts, section 207: “* * * ‘ a promise to do what the promisor is already bound to do cannot be a consideration, for, if a person gets nothing in return for his promise but that to which he is already legally entitled, the consideration is unreal. Therefore, as a general rule, the performance of, or *775 promise to perform, an existing legal obligation, is not a valid consideration.’ ” See, also, 17 C.J.S., Contracts, § 110.
-Counsel for Lehmann argues that the contract under which Edrington agreed to purchase the property was clear and unambiguous and that it plainly obligated Ed-rington to pay for the property, to take title thereto, and permit de Val-court to remain in the -property “rent free” for sixty days, and that, therefore, when Edrington took title only on condition that he -be paid rent during the sixty-day period, he demanded and received something for which he -gave no consideration whatever.
-Counsel for Edrington, on the other hand, maintain that there was ambiguity in the contract; that while it did provide for a rather severe penalty should the vendor 'fail to vacate at the end of the sixty-day period, it contained n-o provision whatever concerning whether there should be any rent -paid for that sixty-day period and counsel maintain that, as a result of this ambiguity, there could have arisen litigation over that question. They argue that since the matter might have been delayed until that dispute could be terminated, by litigation if necessary, any party who had an interest in a speedy determination of that issue might legally bind himself in any way which would bring about a settlement without delay.
It is obvi-ous that the judge a quo felt that the contract was ambiguous on the question of whether or not anything should be paid for the right of occupancy during the sixty-day period, for when objection was made to the introduction of any oral evidence tending to explain the written contract, — the objection being based on the argument that the contract was- clear and unambiguous — he overruled the objection and permitted oral evidence to be introduced, saying: “I -cannot agree with you, Mr. Novick, that the instrument or document is unambiguous; if it was clear this suit wouldn’t be here today; under ordinary circumstances rents are usually due from the date the property is delivered, the act of sale passed; objection overruled.”
When oral testimony was introduced, it consisted of the statements of plaintiff and ■defendant, and these statemen 3 evidence a sharp dispute between them as to how it came about that the contract did- not contain an express provision as to whether rent should be paid.
Edrington said that when the agreement to buy was presented to him: “we questioned the defendant at the time as to whether or not we would be recompensed for the time that we, in effect, owned the house, yet the de Valcourts were living in it, and I was assured by the defendant that it was customary in all cases for people who are making the sale and living in the house to pay the rent payments due on the mortgage, and I asked him to enter that in the contract and was assured it was not necessary, that those payments were customary; * * * jje added that on several later occasions: “on checking up on the progress of the act of sale I questioned him again about it and was on each occasion assured that there would be no question * *
In one part of his testimony, Mr. Edring-ton says that Mr. Segler H. Lehmann, an employee of -defendant, negotiated the transaction and the burden of his testimony is that the statements made concerning the custom as to payment of rent were made by Mr. Segler Lehmann.
It is shown that, shortly before the agreement to purchase was entered into, another offer was signed by Mr. Edrington for the same property and that this offer was identical with the one which was later accepted by -de Valcourt, except as to the amount of the purchase price. This first agreement had been prepared by Mr. Segler Lehmann and it contained a similar stipulation concerning the penalty to be paid after the •sixty-day period, but it contained no stipulation as to rent during the sixty-day period. And it is apparently in connection with this first offer to purchase that Mr. Edring-ton says that Mr. Segler Lehmann told him that it was customary that rent be paid under those circumstances.
The -defendant says that he was not present when Mr. Segler Lehmann and Mr. Ed-rington -discussed the first contract and that ■he did not know what discussions took place between them. Mr. Segler Lehmann was not placed upon the witness stand.
*776 Defendant says that Edrington did not mention the matter of rent until at least thirty days or more after he had executed the offer and after it had been accepted, and that at no time did -he himself tell Ed-rington that it was customary for rent to be paid under such circumstances. He says that he did tell Edrington: “* * * of course, if you can talk them into paying you that matter is up to you.”
•Counsel for defendant points out that Edrington expressly required that there be inserted a clause providing for the rather severe penalty of $50 per week should de Valcourt not surrender possession at the end of sixty days, and he argues that since that clause was inserted, it is evident that had Edrington raised the question of whether rent should be paid during the sixty days, a clause concerning rent would have -been inserted. Edrington’s explanation for requiring the rent clause and not the other is that he was most anxious to get possession as soon as possible and that, therefore, he required a severe penalty for failure to deliver possession after the sixty-day period, but that, in view of the fact that it seemed absolutely essential that de Val-court remain in possession for sixty days, he agreed to that and inserted the clause concerning the penalty but did not insist on a stipulation concerning rent because of the assurances of defendant that, under the circumstances, it was customary that rent be paid.
We feel that, in view of this dispute between the parties, there was ample consideration for Lehman’s agreement to' settle the entire controversy by agreeing that he himself would pay the rent for the period in question. If there had been litigation over that question and it had appeared that he had failed to properly protect the rights of Edrington, he might have been liable to Edrington. He was an expert in the real estate business and if what Edrington says is true, his failure to insist that the necessary clause be inserted in the contract might have been held to be the cause of Ed-rington’s failure to secure rent.
We do not say that, we find as a fact that Lehmann -did give that advice, but the controversy was there and there was a possi'bility that if it developed into litigation, Lehmann might lose. His agreement to pay was amply compensated hy the avoidance of litigation and the speedy determination of the matter with the result that he received his commission of some seven or eight hundred dollars. The speedy determination of that controversy was sufficient consideration. We so held in Hirsch v. Rosenberg, La.App., 14 So.2d 331.
■Since we -find that there was consideration because of the fact that Lehmann himself might have lost his commission as the result of litigation, it is unnecessary that we discuss the question of whether in fact the contract was ambiguous, though we again call attention to the fact that the judge a quo thought it ambiguous, and that in Segari v. Uchello, La.App., 44 So.2d 722, we considered a somewhat similar situation which resulted in rather heated litigation.
Ou-r conclusion is that there was ample consideration for the agreement which defendant made, and that he is liable under that agreement. Accordingly, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.
McBRIDE, J., recused.